**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**GLEN ALAN PUTNAM,**                                        **1:13-CV-02122-BR**

       **Plaintiff,**                              **OPINION AND ORDER**

**v.**

**STEVE BROWN, et al.,**

       **Defendants.**


**GLEN ALAN PUTNAM**
10002 N. Oswego Ave
Portland, OR 97203-1216
(503) 910-2904

      Plaintiff, *Pro Se*

**ELLEN F. ROSENBLUM**
Attorney General
**SHANNON M. VINCENT**
**VANESSA A. NORDYKE**
Senior Assistant Attorneys General
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 947-4700

      Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#128) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


## BACKGROUND

The following facts are taken from Plaintiff's Complaint and the parties' materials related to Defendants' Motion for Summary Judgment and are viewed in the light most favorable to Plaintiff.

At all relevant times Plaintiff Glen Alan Putnam was an inmate at Warner Creek Correctional Facility (WCCF).[1]

On December 2, 2013, Plaintiff filed a *pro se* Complaint in this Court pursuant to 42 U.S.C. § 1983 against 12 Defendants alleging Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution; the Protection of Religious Exercise in Land Use and By Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 21c; unspecified provisions of the Oregon Constitution; and Oregon Administrative Rules 291, Divisions 105 and 143.  Plaintiff sought injunctive relief and damages.

On March 3, 2014, Plaintiff filed an Amended Complaint in which he alleges 16 Defendants violated his rights under the

_____

[1] On January 15, 2015, Plaintiff filed a Notice of Change of Address advising the Court that he had been "released from prison."

2 - OPINION AND ORDER

First, Fifth, and Fourteenth Amendments to the United States
Constitution; RLUIPA; and various Oregon Administrative Rules.
Plaintiff seeks damages and injunctive relief.

On April 24, 2014, Defendants filed an Answer and
Affirmative Defenses to Plaintiff's Amended Complaint in which
they asserted affirmative defenses of qualified immunity,
Eleventh Amendment immunity, failure to state a claim, and
exhaustion of administrative remedies.

On October 27, 2015, Defendants filed their Motion seeking
summary judgment on all of Plaintiff's claims on the grounds that
(1) Plaintiff did not exhaust some of his claims before filing
this action, (2) RLUIPA does not authorize money damages against
state officers in their official capacities and does not create a
private right of action against state officers in their
individual capacities, (3) Plaintiff's claims for injunctive
relief are moot because he has been released from custody,
(4) Defendants are immune from a lawsuit in this Court to the
extent that Plaintiff is bringing state-law claims against them,
(5) Defendants did not violate RLUIPA or Plaintiff's First
Amendment rights to freedom of religion or speech, (6) Plaintiff
is not entitled to relief to the extent that he challenges the
denial of his grievance appeals, and (7) Defendants are entitled
to qualified immunity.

On October 28, 2015, the Court issued a Summary Judgment

Advice Notice to Plaintiff advising him that if he did not submit evidence in opposition to Defendants' Motion, summary judgment would be entered against him if appropriate.

The Court took Defendants' Motion for Summary Judgment under advisement on June 8, 2016.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id.*  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

4 - OPINION AND ORDER

1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


**DISCUSSION**

As noted, Defendants move for summary judgment on all of

Plaintiff's claims on the grounds that (1) Plaintiff did not exhaust some of his claims before filing this action, (2) Plaintiff's claims for injunctive relief are moot because he has been released from custody, (3) RLUIPA does not authorize money damages against state officers in their official capacities and does not create a private right of action against state officers in their individual capacities, (4) Defendants are immune from a lawsuit in this Court to the extent that Plaintiff is suing them for violations of state law, (5) Defendants did not violate RLUIPA or Plaintiff's First Amendment rights to freedom of religion or speech, (6) Plaintiff is not entitled to relief to the extent that he challenges the denial of his grievance appeals, and (7) Defendants are entitled to qualified immunity.

**I.    Failure to Exhaust Claims.**

Defendants assert Plaintiff did not exhaust his administrative remedies as to his claims related to (1) Defendants' refusal to permit him to bring a chess set into WCCF's "yard"; (2) an incident on March 13, 2013; and (3) an incident on August 29, 2013.

**A.    Prison Litigation Reform Act (PLRA) Exhaustion Requirement.**

As noted, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to
> the party injured in an action at law.

Section 1983 creates a private right of action against persons
who, acting under color of state law, violate federal
constitutional or statutory rights. *Devereaux v. Abbey,* 263 F.3d
1070, 1074 (9th Cir. 2001). The PLRA was amended to provide "[n]o
action shall be brought with respect to prison conditions under
Section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted." 42 U.S.C. § 1997e(a). The PLRA "mandates that an
inmate exhaust . . . administrative remedies . . . before
bringing suit to challenge prison conditions." *Ross v. Blake*,
136 S. Ct. 1850, 1854-55 (2016)(quotation omitted). *See also*
*Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1825 (2001)
(same).

The exhaustion requirement applies "to all inmate suits
about prison life, whether they involve general circumstances or
particular episodes, and whether they allege excessive force or
some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
The Supreme Court has made clear that courts "may not excuse a
failure to exhaust, even to take [special] circumstances into
account." *Ross*, 136 S. Ct. at 1856. Moreover, prisoners are

7 - OPINION AND ORDER

obligated to navigate the prison's administrative review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth*, 532 U.S. at 739-41. Accordingly, the Ninth Circuit has held "plaintiffs must pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to the complaint." *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)(emphasis in original). Even if the relief the prisoner receives is nothing more than "corrective action taken in response to an inmate's grievance [that] . . . improve[s] prison administration and satisf[ies] the inmate," it is sufficient relief for an inmate to continue with the administrative process. *Id.* at 936 (quoting *Porter*, 534 U.S. at 525).

Exhaustion of administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense. *Wyatt*, 280 F.3d at 1245. "[D]efendants have the burden of raising and proving the absence of exhaustion." *Id.* at 1120.

> Relevant evidence in so demonstrating would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case.

*Brown*, 422 F.3d at 937. As noted, if the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt*, 315 F.3d at

8 - OPINION AND ORDER

1119-20.

**B.    Plaintiff failed to exhaust his "chess claim."**

Plaintiff alleges in his Amended Complaint that Defendants prohibited him from bringing a chess set onto WCCF's yard in retaliation for Plaintiff filing numerous grievances.

The record reflects Plaintiff submitted a grievance on December 11, 2013, in which he complained he had been denied permission to bring a chess set into the prison yard due to WCCF policy.  Plaintiff's grievance was denied because it involved an "operational decision" that affects all inmates, and operational decisions are not grievable.  Decl. of Celeste Blythe at ¶ 35. Plaintiff did not appeal the denial of his grievance as required by the Oregon Department of Corrections (ODOC) grievance-exhaustion procedure.  Moreover, Plaintiff also did not reframe his grievance as one for retaliation or for lack of a written operational directive or policy, both of which are grievable. Plaintiff, therefore, failed to exhaust his administrative remedies as to his claim that Defendants refused to allow him to bring his chess set into the yard in retaliation for Plaintiff filing numerous grievances.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's chess claim and dismisses that claim without prejudice.

**C.  Plaintiff failed to exhaust his claim related to the March 13, 2013, incident.**

Plaintiff alleges in his Amended Complaint that on March 13, 2013, Defendant Release Counselor Olsen interrupted the worship service that Plaintiff was attending, stated the music was too loud, and requested the inmates conduct the service more quietly.

On March 28, 2013, Plaintiff submitted a grievance concerning Olson's interruption.  Plaintiff received a response to his grievance on April 4, 2013.  On April 14, 2013, Plaintiff appealed the response.  On April 19, 2013, Plaintiff received a response denying his appeal.  Plaintiff did not submit a second appeal as required by the ODOC grievance-exhaustion procedure. Plaintiff, therefore, failed to exhaust his administrative remedies as to his claim relating to the March 13, 2013, incident.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim relating to the March 13, 2013, incident and dismisses that claim without prejudice.

**D.  Plaintiff failed to exhaust his claim related to the August 29, 2013, incident.**

Plaintiff alleges in his Amended Complaint that on

August 29, 2013, Defendant Bagley[2] advised Plaintiff that he
would "pull the plug on your worship" if the noise level reached
more than 90 decibels.

On September 3, 2013, Plaintiff submitted a grievance
regarding Defendant Bagley's actions on August 29, 2013.  On
September 8, 2013, Plaintiff received a response denying his
grievance.  On September 10, 2013, Plaintiff appealed his
grievance.  Plaintiff received a response denying his grievance
on September 20, 2013.  Plaintiff did not submit a second appeal
as required by the ODOC grievance-exhaustion procedure.
Plaintiff, therefore, failed to exhaust his administrative
remedies as to his claim relating to the August 29, 2013,
incident.

Accordingly, the Court grants Defendants' Motion for
Summary Judgment as to Plaintiff's claim relating to the
August 29, 2013, incident and dismisses that claim without
prejudice.

**II. Plaintiff's claims for injunctive relief are moot.**

In his Amended Complaint Plaintiff seeks the following
injunctive relief from the Court:  (1) to enjoin Defendants'
"policy of denying access to religious services during . . . the

---

[2] Plaintiff refers to Defendant Bagley in the body of his
Amended Complaint, but he does not identify him as a Defendant in
the caption or list him as a party to this action in the
"Parties" section of his Amended Complaint.

time that [Plaintiff] has been scheduled for a BM-17 work assignment but that work responsibility has been completed and he has been released to the general population to participate in any activities of his choosing"; (2) to require an order "to restore plaintiffs [*sic*] pre-April 4th, 2013 . . . status as activities clerk dismissing three Disciplinary Orders of 4/9/2013 'Disrespect II'; 7/8/2013 14 'Disobedience II' and 8/1/2013 'Disrespect III'"; (3) to enjoin the interference and disruption of Plaintiff's religious services for 'safety and security' issues; (4) to require ODOC staff "to strictly follow the OAR procedures" for accepting and processing grievances; (5) to enjoin "application of BM-17 work requirements to deny inmates access to religious callouts during their scheduled work time but after their supervisors have released them to join the general population"; (6) to require ODOC to provide television "channels that promote creationism such as TBN and the Hallmark Channel in the same proportion to the number of channels that promote Natural Humanism"; (7) to require "security staff to acknowledge that unless there is a legitimate security concern as determined by the Functional Unit Manager . . . the chaplain has exclusive authority and 'responsibility for coordination, facilitation and supervision of inmate religious activities'"; and (8) to enjoin "intimidation and harassment by officers against Christians and Christian activities."

12 - OPINION AND ORDER

As noted, Defendants assert Plaintiff's claims for injunctive relief are moot because he has been released from custody.

The Ninth Circuit has made clear that "[a]n inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action" because "the released inmate is no longer subject to the prison conditions or policies he challenges." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)(citations omitted).  In *Alvarez* the plaintiff was an inmate in ODOC custody in 2004 when he initiated litigation alleging ODOC officials were substantially burdening his religious practices with their policies.  The plaintiff, however, was released from custody in 2007, and, therefore, he was no longer subject to those ODOC policies.  The Ninth Circuit explained:

> Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.  Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted.  And the [released] inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place.

*Id*. (quotation omitted).  The Ninth Circuit also rejected the

13 - OPINION AND ORDER

plaintiff's assertion that his claims for injunctive relief were
not moot because "his claims challenge ongoing prison policies to
which other inmates will remain subject." *Id*.  The Ninth Circuit
noted it had recognized an exception to the mootness doctrine in
*United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007):

"[A]lthough there is no reasonable likelihood that the plaintiff
himself will be subjected to the same alleged harm in the future,
he is, nevertheless, challenging ongoing policies to which others
will continue to be subject." *Id*. (citing *Howard*, 480 F.3d at
1009-10).  The Ninth Circuit noted it has "never applied *Howard*
beyond . . . circumstances involving short-lived pretrial
proceedings in criminal prosecutions, where civil class actions
would not be conducive to obtaining the relief sought." *Id*. at
1065.  In addition,

> even if *Howard* appl[ied] more broadly, it would
> not apply in this case to Alvarez's RLUIPA claims
> challenging prison policies affecting the
> conditions of his post-conviction incarceration.
> While we have assumed, for purposes of this
> appeal, that at least some of the policies and
> practices Alvarez challenged remain ongoing and,
> thus, will continue to affect current ODOC
> inmates, those inmates can bring their own RLUIPA
> claims challenging those policies.  There is
> nothing in the record to suggest that these other
> inmates would generally be unable to litigate
> their RLUIPA claims to completion, and to do so as
> a class action if they so chose.

*Id*.  The court, therefore, concluded the plaintiff's claims for
injunctive and declaratory relief were moot and that the district
court did not err when it dismissed those claims.

14 - OPINION AND ORDER

As noted, Plaintiff has been released from ODOC custody, and, therefore, he is "free of the policy or practice that provoked his [claims for injunctive relief] in the first place." As in *Alvarez*, even if some of the policies or procedures about which Plaintiff complains are those to which other inmates may "continue to be subject[ed]," those inmates can bring their own actions challenging those policies and there is not anything in the record that suggests other inmates would be unable to litigate their actions to completion.  The Court, therefore, concludes Plaintiff's claims for injunctive relief are moot.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims for injunctive relief.

**III. RLUIPA does not create a private right of action against state officials acting in their individual capacities.**

In his Complaint Plaintiff seeks damages against Defendants for violations of RLUIPA.  The Ninth Circuit, however, has held RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received. . . .  [T]here is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity." *Wood v. Yordy*, 753 F.3d 899, 904-5 (9th Cir. 2014).  Thus, RLUIPA does not create a private right of action against officials acting in their individual capacities. In addition, when "an individual acts under color of state law to

15 - OPINION AND ORDER

burden a plaintiff's rights to religious exercise, the plaintiff can [only] sue the government." *Id*.

Accordingly, the Court grants Defendants' Motion for Summary Judgment to the extent that Plaintiff seeks damages against Defendants in their individual capacities pursuant to RLUIPA.

## IV. Defendants are immune from a lawsuit in this Court to the extent that Plaintiff brings claims against them for violations of state law.

Although it is not entirely clear, it appears Plaintiff may be asserting state-law claims against Defendants in his Amended Complaint.

Oregon Revised Statute § 30.265(l) provides in pertinent part: "The sole cause of action for any tort of . . . employees . . . of a public body acting within the scope of their employment . . . shall be an action against the public body only." Accordingly, Plaintiff may only bring state-law claims against the State of Oregon, Defendants' employer. The Court, therefore, substitutes the State of Oregon as Defendant for Plaintiff's state-law claims.

Defendants assert to the extent that Plaintiff brings state-law claims, those claims are barred by the Eleventh Amendment. The Eleventh Amendment provides:  "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State."  Although the Eleventh Amendment does not bar actions against a state by its own citizens on its face, courts have consistently held an unconsenting state is immune from actions brought in federal courts by her own citizens as well as by citizens of another state.  *Mayweathers v. Newland* 314 F.3d 1062, 1069 (9th Cir. 2002).  *See also Bethel Native Corp. v. Dep't of Interior*, 208 F.3d 1171, 1173 (9th Cir. 2000) (same).  Here the State of Oregon has not waived its sovereign immunity in this case.

Further, the Supreme Court has held "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985).  In addition, "ODOC, as an agency of the state, is not a 'person' under § 1983." *Ishmael v. Or. Dep't of Corr.*, No. 2:14-cv- 01651–JO, 2015 WL 5829808, at *2 (D. Or. Oct. 6, 2015)(citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)).

In summary, the Court concludes Oregon Revised Statute § 30.265(1) prohibits Plaintiff from asserting his state-law claim against Defendants, and the Eleventh Amendment prohibits Plaintiff from asserting his state-law claims against the State of Oregon in this Court.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's state-law claims and dismisses those claims without prejudice.

**V.    Merits of Plaintiff's RLUIPA claim.**

Plaintiff asserts Defendants violated RLUIPA when they
(1) interrupted various worship meetings to turn on the lights
and/or to require the participants to turn down the music and
(2) "den[ied Plaintiff] access to religious services during
. . . the time that [Plaintiff] [was] scheduled for a BM-17 work
assignment but [he had completed] that work responsibility . . .
and he [had] been released to the general population to
participate in any activities of his choosing."

Defendants assert to the extent that any of Plaintiff's
RLUIPA claim remains, no reasonable juror could conclude
Defendants violated RLUIPA.

**A.    RLUIPA Standards**

RLUIPA provides in pertinent part:

> [States shall not] impose a substantial burden on
> the religious exercise of a person residing in or
> confined to an institution . . . even if the
> burden results from a rule of general
> applicability, unless the [state] demonstrates
> that imposition of the burden on that person--
>
> > (1) is in furtherance of a compelling
> > governmental interest; and
> >
> > (2) is the least restrictive means of
> > furthering that compelling governmental
> > interest.

42 U.S.C. § 2000cc-1(a).

When evaluating a claim under RLUIPA the court "must
begin by identifying the 'religious exercise' allegedly impinged

18 - OPINION AND ORDER

upon." *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008). "Next, [the court] must ask whether the prison regulation at issue 'substantially burdens' that religious exercise." *Id*. A substantial burden on religious exercise is one that "impose[s] a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quotation omitted). The burden is on the plaintiff to establish the first two prongs of the analysis. *Greene*, 513 F.3d at 988 (citing 42 U.S.C. § 2000cc-1(a) and § 2000cc-2(b)).

After "a plaintiff makes the requisite showing under RLUIPA of a substantial burden on the exercise of his religion, it becomes the defendant's responsibility to establish that the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Greene*, 513 F.3d at 988 (citing 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b); and *Warsoldier*, 418 F.3d at 995). To establish the defendant is using the least restrictive means, the defendant must show it "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

**B.    Interruption of worship services to turn on lights or to require a reduction in music volume.**

As noted, Plaintiff asserts Defendants violated his right to exercise his religion pursuant to RLUIPA when they interrupted various worship services to turn on lights or to

19 - OPINION AND ORDER

require a reduction in music volume.  With respect to the
substantial-burden prong of the analysis, it is undisputed that
the interruptions were brief and limited in scope and that
Defendants did not require worshippers to discontinue the
service.  Thus, the Court concludes the brief interruptions did
not "impose a significantly great restriction or onus" on
Plaintiff's exercise of his religion, and, therefore, the Court
concludes no reasonable juror would find Defendants' brief
interruptions of worship services to request worshippers to turn
on the lights or to turn down the music were a substantial burden
on Plaintiff's exercise of his religion.

Accordingly, the Court grants Defendants' Motion for
Summary Judgment as to Plaintiff's RLUIPA claim based on
Defendants' interruptions of religious services to turn on the
lights or to require worshippers to turn down the music.

**C.    Requiring inmates to work the duration of their work
assignment rather than permitting them to attend
religious services.**

Plaintiff alleges Defendants violated RLUIPA when they
did not permit him to attend worship services during times that
conflicted with his work schedule.  Specifically, the Oregon
Constitution requires all inmates to participate in work-program
assignments.  Or. Const. Art. I § 41.  The parties refer to this
as the "Measure 17" requirement.  Oregon Administrative Rule 291-
201-0110 permits inmates to be absent from their Measure 17 work

20 - OPINION AND ORDER

assignments "due to scheduled and unscheduled health

service/mental health visits, misconduct hearings, misconduct

hold-ins, medical lay-ins, assignment-related counselor callouts,

or threats to the safety/security of the facility."  ODOC

specifically requires inmates "to schedule non-work related

activities outside their Measure 17 program assignment schedule."

Decl. of Trevor Stancliff at ¶ 6.  ODOC, however, makes an

exception

> when an inmate is unable to attend their primary
> religious service due to the Measure 17 program
> assignment schedule.  If an inmate's primary
> religious service is only offered at a time he is
> required to work and there is no other way the
> inmate's religious practice needs can be met, the
> inmate may be authorized to leave his Measure 17
> program assignment to attend the service.
> However, if multiple services are offered that
> will meet the inmate's religious needs, then the
> inmate is required to attend a service outside of
> his work schedule for his Measure 17 program
> assignment.

Stancliff Decl. at ¶ 6.  The record reflects WCCF offers multiple

religious services throughout the week.  In his Amended Complaint

and Response to Defendants' Motion for Summary Judgment Plaintiff

fails to identify what his primary religious service was while he

was at WCCF.  In fact, the record reflects Plaintiff scheduled

himself for 24 religious services activities in April 2013.  In

addition, Plaintiff fails to establish that his primary religious

service was offered only at a time when he was required to work.

The Court, therefore, concludes no reasonable juror would find

Defendants substantially burdened Plaintiff's exercise of his
religion by requiring him to attend religious services at times
that did not conflict with Plaintiff's Measure 17 work schedule.

In summary, the Court grants Defendants' Motion for Summary
Judgment as to Plaintiff's RLUIPA claim in its entirety.

## VI. Merits of Plaintiff's First Amendment Claim

Plaintiff asserts Defendants' interruption of worship
services to require worshippers to turn on the lights or to turn
down the music and Defendants' refusal to permit Plaintiff to
attend worship services during his Measure 17 work assignment
also violated the Free Exercise Clause of the First Amendment.

"Inmates retain the protections afforded by the First
Amendment, 'including its directive that no law shall prohibit
the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d
878, 884 (9th Cir. 2008)(quoting *O'Lone v. Estate of Shabazz*, 482
U.S. 342, 348 (1987)).  "However, '[l]awful incarceration brings
about the necessary withdrawal or limitation of many privileges
and rights, a retraction justified by the considerations
underlying our penal system.'"  *Id*. (quoting *O'Lone*, 482 U.S. at
348).

"'When a prison regulation impinges on inmates'
constitutional rights, the regulation is valid if it is
reasonably related to legitimate penological interests.'"
*Shakur*, 514 F.3d at 884 (quoting *Turner v. Safley*, 482 U.S. 78,

22 - OPINION AND ORDER

89 (1987)).  In *Turner* the Supreme Court set out four factors the Court must consider when determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3) Whether accommodation of the asserted constitutional right will impact . . . guards and other inmates, [and] the allocation of prison resources generally; and
>
> (4) Whether there are obvious, easy alternatives to the prison's current policy.

482 U.S. at 89-90 (quotations omitted).

**A.   Turning on lights and requiring worshippers to turn down the music during worship services.**

Defendants assert it is "against common security practices" for inmates to be in the chapel library where the worship services at issue were held without lights absent prior approval.  In particular, when Defendant Correctional Officer (CO) Lawrence La Claire looked into the window of the chapel library during the worship service for a safety check, the room was so dark that CO La Claire could not see what the inmates were doing.  Decl. of Lawrence La Claire at ¶¶ 8-9.  A correctional officer's lack of ability to see what inmates are doing poses a security concern because inmates could be passing contraband, violating ODOC's disciplinary rules, or jeopardizing the safety

23 - OPINION AND ORDER

of the prison.

Similarly, Defendants assert it is against common security practices to permit music during a worship service to be so loud that correctional officers could not hear a call for help from an inmate or a volunteer. Correctional Officer Lange testifies in her Declaration that at the time she asked worshippers to turn down the volume, the music was so loud that "it would drown out a call for help from a volunteer or inmate" in addition to the fact that it was disrupting Hebrew worship services that were taking place next door. Decl. of Jama Lange at ¶ 11.

The Court concludes there is a valid, rational connection between governmental interests in inmate and prison security and the requirement for lights to be and music to be at a reasonable volume during worship services. The Court concludes this factor of the *Turner* analysis favors Defendants.

With respect to the second prong of the *Turner* analysis, Defendants have established there are alternative ways of conducting worship services such as holding the services with the lights on or obtaining permission before the service to conduct part of the service with the lights off and keeping the music volume at a reasonable level. The Court concludes this factor favors Defendants.

Although there is not any indication that conducting

24 – OPINION AND ORDER

worship services with the lights on and/or conducting services with loud music would affect the allocation of prison resources generally, these circumstances could lead to serious safety and security issues as to both inmates and prison personnel.  The Court concludes this factor is neutral.

Plaintiff does not present any "obvious, easy alternatives to the prison's current policy" requiring worshippers to obtain permission before conducting portions of worship services with the lights off or to conduct services with music at anything other than a reasonable volume.  The Court concludes this factor favors Defendants.

Finally, the Ninth Circuit has held "relatively short-term and sporadic" intrusions into worship services such as those at issue here do not constitute a substantial burden on the prisoner's First Amendment free exercise rights.  *See, e.g.,* *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998)(affirming summary judgment on the plaintiff's claim that the defendant violated the Free Exercise Clause when he interrupted the plaintiff inmate's prayer time 18 times over two months because it was "relatively short-term and sporadic" and not a "substantial burden"); *Howard v. Skolnik*, No. 09-15382, 2010 WL 1253458, at *1 (9th Cir. Mar. 30, 2010)(affirming summary judgment on the plaintiff's "First Amendment claim concerning two alleged incidents where prison personnel interfered with [the

25 - OPINION AND ORDER

plaintiff's] fasting because there was no genuine issue as to whether a substantial burden was placed on [the plaintiff's] free exercise of religion.").

On this record and viewing the evidence in the light most favorable to Plaintiff, the Court concludes no reasonable juror could find Defendants' interruption of worship services to require worshippers to turn on the lights or to turn down the music violated Plaintiff's First Amendment rights.

**B.    Worship service attendance during Measure 17 work assignment.**

Plaintiff asserts Defendants violated Plaintiff's First Amendment rights when they would allow him to attend worship services only at times that did not conflict with his Measure 17 work assignment times.  Defendants assert two governmental interests with this requirement:  compliance with the Oregon Constitution's requirement that all inmates participate in work-program assignments and inmate rehabilitation through the Measure 17 work program.  The Court concludes this factor favors Defendants.

As noted, the record reflects alternative means existed for Plaintiff to exercise his right to worship at WCCF. Specifically, worship services were offered at numerous times throughout the week at the facility.  In addition, if Plaintiff had designated a specific worship service as his "primary religious service" and that services was "only offered at a time

26 - OPINION AND ORDER

he [was] required to work," Plaintiff could "be authorized to leave his Measure 17 program assignment to attend the service." Plaintiff, however, did not designate any worship service as his primary religious service, and Plaintiff was permitted to attend numerous religious services that occurred outside of his Measure 17 work times.  The Court concludes this factor favors Defendants.

The parties did not address the third factor:  "Whether accommodation of the asserted constitutional right will impact . . . guards and other inmates, [and] the allocation of prison resources generally."  The Court, therefore, concludes this factor is neutral.

With respect to the fourth factor, the burden is on the prisoner challenging the regulation to show there are obvious, easy alternatives to the regulation.  *O'Lone*, 482 U.S. at 350. Plaintiff identifies only one alternative to the prison's current policy:  He should be permitted to attend worship services during his Measure 17 work period whenever he has completed his work. As noted, the Oregon Constitution mandates inmates to participate in work-program assignments because participation in such assignments aids in rehabilitation of inmates during their incarceration.  WCCF offers various religious services at numerous times throughout the week to accommodate the exercise of inmates' religions.  Permitting inmates to attend worship

27 - OPINION AND ORDER

services on completion of their specific Measure 17 work but before the time allotted for their work assignment ends would create a lack of clarity regarding the time-frame designated for work assignments as well as potential differences in work assignment times based on supervisor discretion and workload, which, in turn, could create individual discrepancies in work assignments rather than a definite, stable, institution-wide standard for work-assignment completion. The Supreme Court has recognized "certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison," and the Court has directed lower courts to evaluate the policies of a correctional facility with ""due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)(quoting *Turner*, 482 U.S. at 85).

Considering the Supreme Court's rulings and the "significant implications" for the prison system in addition to the fact that Plaintiff has not shown an obvious alternative to the prison regulation, the Court concludes the fourth factor favors Defendants. On this record and viewing the evidence in the light most favorable to Plaintiff, the Court concludes Defendants' policy was reasonably related to legitimate penological interests and no reasonable juror could conclude

Defendants' refusal to permit Plaintiff to attend worship services during his Measure 17 work period violated Plaintiff's First Amendment rights to exercise his religion.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim.

**VII. Denial of Grievance Appeals**

Plaintiff also seeks damages from Defendant Grievance Coordinator Celeste Blythe for denial of Plaintiff's various grievance appeals. The Ninth Circuit, however, has made clear "'inmates lack a separate constitutional entitlement to a specific grievance procedure,' [and, therefore, prison officials] cannot be held liable under § 1983 for denying [an inmate's grievance] appeal." *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014)(quoting *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)). *See also Shaw v. Simpson*, No. 15-cv-04906-PJH, 2015 WL 8294301, at *2 (N.D. Ca. Dec. 9, 2015)("To the extent he challenges the denial of inmate appeals; [the plaintiff] is not entitled to relief because there is no constitutional right to a prison administrative appeal or grievance system.")(citing *Ramirez*, 334 F.3d at 860).

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim for damages related to denial of his grievance appeals.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#128) for Summary Judgment.  The Court **DISMISSES without prejudice** Plaintiff's chess claim; Plaintiff's claims related to the March 13, 2013, and August 29, 2013, incidents; and Plaintiff's state-law claims.  The Court **DISMISSES with prejudice** the remainder of Plaintiff's claims.

IT IS SO ORDERED.

DATED this 1st day of August, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

30 - OPINION AND ORDER